**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

SWALEH SHAFIQ MOHAMMED,      )
                             )
        Plaintiff,           )
                             )          No. 23 C 15301
    v.                       )
                             )          Judge Sara L. Ellis
SYED HUSSAIN, LOAY SANDOUKA, and   )
JEHANZEB SHEIKH,             )
                             )
        Defendants.          )

**OPINION AND ORDER**

Plaintiff Swaleh Shafiq Mohammed, an involuntarily committed detainee at the Elgin

Mental Health Center ("EMHC"), filed this civil rights action pursuant to 42 U.S.C. § 1983.  In

his first amended complaint, he names as Defendants his treating psychiatrist, Dr. Syed Hussain;

his treating psychologist, Dr. Loay Sandouka; and his treating physician, Dr. Jehanzeb Sheikh.

Mohammed claims that they provided inadequate medical care in violation of the Fourteenth

Amendment, engaged in medical malpractice, and committed negligent infliction of emotional

distress ("NIED").  Dr. Hussain and Dr. Sandouka have filed motions to dismiss Mohammed's

claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  Because the Court finds

Mohammed has sufficiently stated his claims against Dr. Hussain, the Court denies Dr. Hussain's

motion to dismiss.  But because the statute of limitations has run on Mohammed's claims against

Dr. Sandouka and Mohammed cannot take advantage of relation back or equitable tolling to

make those claims timely, the Court grants Dr. Sandouka's motion and dismisses Mohammed's

claims against Dr. Sandouka with prejudice.

**BACKGROUND**[1]

On February 26, 2021, Mohammed was involuntarily committed to EMHC. He has been under EMHC's psychiatric and physical care since that time. In October 2021, Dr. Hussain became Mohammed's treating psychiatrist. Before this, Mohammed took fluoxetine and buspirone. Dr. Hussain continued Mohammed on these medications. Dr. Hussain changed Mohammed's diagnosis from schizoaffective disorder to bipolar disorder around November 19, 2021. In January 2022, Mohammed indicated his disagreement with the bipolar diagnosis and asked Dr. Hussain not to treat him for bipolar disorder. Mohammed also asked that a different doctor treat him, but his requests were ignored. Dr. Hussain added divalproex to Mohammed's medication regimen around February 15, 2022. On February 24, 2022, Dr. Hussain increased Mohammed's divalproex dosage.

Fluoxetine can cause serotonin syndrome ("SSRI Syndrome"), which can lead to agitation, restlessness, insomnia, confusion, rapid heartbeat, high blood pressure, diarrhea, nausea, and mania. The combination of fluoxetine, buspirone, and divalproex significantly increases the possibility of SSRI Syndrome.

Between February and June 2022, Mohammed experienced manic symptoms and his blood pressure spiked, with it peaking on March 1, 2022. In April 2022, Mohammed began experiencing nausea and vomiting. In May 2022, he also had dizziness, abdominal pain, and diarrhea. In May 2022, Mohammed's medical records reflect that he asked Dr. Hussain to change his medications and discontinue his fluoxetine prescription. Dr. Hussain began decreasing the amount of fluoxetine Mohammed took, with the goal of discontinuing the

---

[1] The Court takes the facts in the background section from Mohammed's first amended complaint and presumes them to be true for the purpose of resolving Dr. Hussain and Dr. Sandouka's motions to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

medication. Shortly thereafter, Mohammed's symptoms subsided, and he experienced a significant blood pressure drop on June 1, 2022.

Mohammed was not in a stable state of mind when Dr. Hussain changed his medication regimen to add divalproex. Dr. Hussain did not inform Mohammed about the risk of SSRI Syndrome, nor did he explain its symptoms. Dr. Hussain never informed Mohammed that the side effects he suffered, such as nausea, vomiting, spiking blood pressure, mania, and dizziness, could indicate SSRI Syndrome. According to Mohammed, had Dr. Hussain explained that mania was a side effect of fluoxetine or informed him of the possibility of SSRI Syndrome, Mohammed would have refused to take fluoxetine.

While on the combination of the three drugs, Mohammed received several behavioral write ups. He was housed during that time with K.H., who also was manic and had a history of violence. Dr. Sandouka, one of the psychologists at EMHC on Mohammed's treatment team, had the ability to change Mohammed's roommate. Dr. Sandouka reported to Dr. Hussain. Dr. Sandouka recognized that Mohammed and K.H. were both volatile and manic. Instead of separating them or asking them separately about their housing situation, Dr. Sandouka asked Mohammed and K.H. together whether they should be separated. They responded that they could remain as roommates, despite being manic and unable to understand the risks. On April 2, 2022, K.H. assaulted Mohammed, hitting him hard on the left side of his head. This assault caused swelling on the left side of Mohammed's head and neck. After the assault, Dr. Sandouka separated Mohammed and K.H.

Mohammed saw Dr. Sheikh, a doctor at EMHC, to treat the pain in his neck from the assault. Dr. Sheikh gave Mohammed a neck brace, which did not do much to alleviate the pain. Mohammed continued to complain about pain for five months, indicating that it impacted his

3

quality of life, ability to exercise, and ability to do laundry and other simple tasks. Dr. Sheikh told Mohammed that he did not need further treatment. But after five months, Mohammed had an MRI, which showed an excruciated disc and stenosis between the C4 and C6 vertebrae. Mohammed began physical therapy and took pain medication, which did not help much. Mohammed then requested surgery, which he ultimately underwent on March 3, 2025.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. Claims against Dr. Hussain

#### A. Deliberate Indifference

Dr. Hussain challenges Mohammed's deliberate indifference claim against him, contending that Mohammed has only pleaded conclusory allegations and at most medical malpractice, which cannot support deliberate indifference. The Court divides its consideration of

4

this claim into two, considering first whether Dr. Hussain's continued treatment of Mohammed with the three medications fell below constitutional standards and then second whether Dr. Hussain violated Mohammed's right to informed consent.

### 1. Course of Treatment

The parties frame their arguments as to the proper standard that applies to Mohammed's claim about Dr. Hussain's course of treatment under the Fourteenth Amendment differently. In his motion to dismiss, Dr. Hussain argues that Mohammed has not met the objective unreasonableness standard set forth in *Miranda v. County of Lake*, 900 F.3d 335, 353–54 (7th Cir. 2018). Mohammed responds that, given Mohammed's status as an involuntarily committed detainee at EMHC and not a pretrial detainee, the professional judgment standard set forth in *Youngberg v. Romeo*, 457 U.S. 307 (1982), should apply. In reply, Dr. Hussain adopts the *Youngberg* professional judgment standard. While the Court questions whether the *Miranda* objective unreasonableness standard is more appropriate, *see, e.g.*, *Gunderson v. Corcoran*, No. 21-cv-04891, 2023 WL 6049914, at *8 (N.D. Ill. Sept. 15, 2023) (considering civil detainee's conditions of confinement claim under the Fourteenth Amendment's objective unreasonableness standard); *Nadzhafaliyev v. Hardy*, No. 16 C 6844, 2020 WL 7027578, at *6 (N.D. Ill. Nov. 30, 2020) (applying Fourteenth Amendment objective unreasonableness standard to inadequate medical care claims brought by a plaintiff involuntarily committed to EMHC after a finding of not guilty by reason of insanity); *Wesley v. Armor Corr. Health Servs. Inc.*, No. 19-cv-0918, 2022 WL 16748861, at *10–11 (E.D. Wis. Nov. 7, 2022) (same); *Johnson v. Schuyler Cnty.*, No. 16-4204, 2019 WL 2778084, at *2 (C.D. Ill. July 2, 2019) (considering civil detainee's excessive force and conditions of confinement claims under objective unreasonableness standard), given

the parties' apparent agreement, the Court analyzes this claim using the professional judgment standard as well.[2]

Under the professional judgment standard, Mohammed must allege that (1) Mohammed had an objectively serious medical need, (2) Dr. Hussain knew of Mohammed's serious medical need, and (3) Dr. Hussain disregarded that need. *Johnson v. Rimmer*, 936 F.3d 695, 707 (7th Cir. 2019). The third prong requires a showing that Dr. Hussain's "subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Id.* (quoting *Collignon*, 163 F.3d at 989).

Mohammed appears to claim that he suffered from SSRI Syndrome due to the combination of medications that Dr. Hussain prescribed, that Dr. Hussain knew that Mohammed suffered from SSRI Syndrome, and that Dr. Hussain disregarded the risk to Mohammed's health by continuing to treat Mohammed with the combination of medications despite observing symptoms associated with SSRI Syndrome and Mohammed's requests for alternative treatment. Dr. Hussain argues that Mohammed has alleged nothing but a disagreement with his medical judgment, which does not suffice to suggest that the treatment Dr. Hussain rendered demonstrated a lack of professional judgment. *See Collignon*, 163 F.3d at 990 (disagreement about treatment "might state a negligence cause of action" but "cannot make out a substantive due process claim"). Dr. Hussain also argues that Mohammed has not alleged that Dr. Hussain knew or should have known that Mohammed suffered from SSRI Syndrome. While a close

---

[2] The Seventh Circuit has described the professional judgment standard as requiring "essentially the same analysis as the Eighth Amendment standard." *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998). The objective unreasonableness standard, however, is less demanding than the Eighth Amendment standard and so, presumably, would be more favorable to Mohammed. *See Est. of Perry v. Wenzel*, 872 F.3d 439, 453 (7th Cir. 2017) (objective unreasonableness standard is "less demanding" than the Eighth Amendment standard).

question, drawing all inferences in Mohammed's favor, the Court at this stage will allow his claim to go forward. His allegations suggest that in the face of Mohammed's worsening symptoms associated with SSRI Syndrome that arose soon after Dr. Hussain placed Mohammed on the combination of fluoxetine, buspirone, and divalproex, Dr. Hussain did nothing for several months. When Dr. Hussain finally agreed with Mohammed to discontinue the fluoxetine prescription, Mohammed alleges that his symptoms subsided. The facts may undermine Mohammed's allegations, with Dr. Hussain able to explain through discovery the reasoning behind his treatment of Mohammed, but at this stage, the Court will allow Mohammed to continue with this claim.

### 2. Informed Consent

Separately, Mohammed argues that Dr. Hussain failed to obtain Mohammed's informed consent to the course of treatment that led to him developing SSRI Syndrome. To state a due process violation for failure to obtain informed consent, Mohammed must allege that "(1) he was deprived of information that a reasonable patient would deem necessary to make an informed decision about his medical treatment, (2) the defendant acted with deliberate indifference to [his] right to refuse treatment, and (3) if [he] had received the information, he would have refused the treatment." *Knight v. Grossman*, 942 F.3d 336, 343–44 (7th Cir. 2019). "Inadvertent failures to impart medical information cannot form the basis of constitutional violation." *Walker v. McArdle*, 861 F. App'x 680, 686 (7th Cir. 2021) (quoting *Pabon v. Wright*, 459 F.3d 241, 250 (2d Cir. 2006)). Mohammed must plead sufficient facts to demonstrate that the risks of negative side effects were "substantial enough that a reasonable patient would expect to be apprised of them." *Phillips v. Wexford Health Sources, Inc.*, 522 F. App'x 364, 367 (7th Cir. 2013) (Eighth Amendment deliberate indifference claim).

As the Court previously concluded in screening Mohammed's initial *pro se* complaint, Doc. 10 at 3–4, Mohammed has sufficiently alleged a claim against Dr. Hussain for failure to obtain informed consent from Mohammed with respect to the combination of fluoxetine, buspirone, and divalproex. Mohammed alleges that the combination of the three medications caused him to develop SSRI Syndrome, with his symptoms including mania, elevated blood pressure, nausea, vomiting, dizziness, abdominal pain, and diarrhea. He alleges that Dr. Hussain did not inform him of the fact that the combined use of fluoxetine, buspirone, and divalproex significantly raised the possibility of his developing SSRI Syndrome or of SSRI Syndrome's symptoms. Mohammed also alleges that had Dr. Hussain notified him of the possibility of developing SSRI Syndrome from taking the three medications together or of mania as one of fluoxetine's side effects, Mohammed would have refused to take fluoxetine.

Dr. Hussain argues, however, that Mohammed has not alleged that a reasonable patient would deem the possibility of SSRI Syndrome necessary to make an informed decision as to whether to take the medication, the severity of SSRI Syndrome, or the chance of suffering from SSRI Syndrome with the combination of medications Dr. Hussain prescribed. Dr. Hussain also contends that Mohammed has not alleged that Dr. Hussain subjectively knew that Mohammed did not consent to taking the medication or that Mohammed would have wanted to know of the risk of SSRI Syndrome. Dr. Hussain asks too much of Mohammed at the pleading stage, however. Mohammed's first amended complaint allows the inferences that a reasonable patient would deem information about SSRI Syndrome necessary in order to give informed consent and that Dr. Hussain acted with deliberate indifference to Mohammed's right to refuse the treatment Dr. Hussain prescribed. *See Williams v. Kelly*, No. 15 C 8135, 2017 WL 56642, at *3 (N.D. Ill. Jan. 5, 2017) (allegations of a substantial risk of gynecomastia sufficient to state an Eighth

8

Amendment claim for lack of informed consent); *Kudelka v. Dodge Corr. Inst.*, No. 19-C-11, 2019 WL 1099069, at *2 (E.D. Wis. Mar. 8, 2019) (allegations of a substantial risk of developing ulcers sufficient to state an Eighth Amendment claim for lack of informed consent). Therefore, the Court will allow Mohammed to proceed on this aspect of his claim against Dr. Hussain.

### B.     NIED

Mohammed's NIED claim requires allegations of duty, breach, causation, and damages. *Schweihs v. Chase Home Fin., LLC*, 2016 IL 120041, ¶ 31.  Because Mohammed brings his claim as a direct victim of NIED, he also must plead "contemporaneous physical injury or impact." *Id.* ¶¶ 31, 38, 44.  This requires "actual physical contact of some sort." *Benton v. Little League Baseball, Inc.*, 2020 IL App (1st) 190549, ¶ 76.  Mohammed alleges that Dr. Hussain caused him emotional distress when he did not obtain Mohammed's informed consent for the three medications that he prescribed in light of the known side effects.  He also contends that Dr. Hussain's conduct caused him distress related to physical injuries he suffered from K.H.'s assault.  Dr. Hussain argues that Mohammed has not plausibly alleged a contemporaneous physical injury or impact to allow him to proceed on the NIED claim.

Mohammed argues that Illinois courts treat the physical impact requirement broadly, and that the ingesting of the medication, his physiological symptoms from taking the medication, and the physical assault he suffered qualify as physical impacts.[3]  Here, Mohammed's claim that he suffered certain side effects like vomiting, dizziness, abdominal pain, nausea, and diarrhea meets the physical impact requirement, particularly given Mohammed's allegation that Dr. Hussain

---

[3] Dr. Hussain complains that Mohammed's first amended complaint does not include allegations that the ingestion and absorption of the medications and the side effects from them amount to contemporaneous physical impact.  But the Court finds it reasonable to draw such inferences from the first amended complaint and so proceeds to consider whether these alleged injuries suffice to state an NIED claim.

caused him distress when he did not timely discontinue Mohammed's medications. *See Jose-Nicolas v. Wexford Health Sources, Inc.*, No. 20 C 5507, 2024 WL 3251368, at *11 (N.D. Ill. July 1, 2024) (plaintiff's claim of suffering "abdominal pain, vomiting, and nausea" could suggest contemporaneous physical injury or impact). Because Dr. Hussain only challenged this element of Mohammed's NIED claim, the Court allows it to proceed.

## II.     Claims against Dr. Sandouka

Dr. Sandouka argues that Mohammed's claims against Dr. Sandouka cannot proceed because the statute of limitations had run by the time Mohammed filed his first amended complaint naming Dr. Sandouka as a defendant. The statute of limitations is an affirmative defense that Mohammed need not anticipate in his first amended complaint to survive Dr. Sandouka's motion to dismiss. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). But that is not the case where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint reveals that an action is untimely under the governing statute of limitations." *Id.*; *see also Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (considering statute of limitations defense on motion to dismiss where relevant dates were set forth in the complaint). For § 1983 claims, the Court turns to state law for the relevant statute of limitations. *See Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 822 (7th Cir. 2022). In Illinois, the appropriate statute of limitations is two years. *See Towne v. Donnelly*, 44 F.4th 666, 667 (7th Cir. 2022) (recognizing 735 Ill. Comp. Stat. 5/13-202 creates a two-year statute of limitations for § 1983 claims). The parties agree that the same two-year statute of limitations applies to Hussain's negligent infliction of emotional distress claim. *See Novak v. Levenfeld Pearlstein*, No. 13 C 08861, 2014 WL 4555581, at *10 (N.D. Ill. Sept. 15, 2014).

10

As Dr. Sandouka points out, Mohammed bases his claims against Dr. Sandouka on events leading up to and surrounding K.H.'s assault of Mohammed, which occurred on April 2, 2022. The Court received Mohammed's *pro se* complaint on October 24, 2023. Doc. 1. In his initial complaint, he named Dr. Hussain and the EMHC director, Michelle Evans, as defendants. The initial complaint focused on Dr. Hussain's prescription of the three medications, but it also mentioned the April 2, 2022 assault by K.H. and Mohammed's resulting injuries. On July 8, 2024, the Court received a proposed amended complaint from Mohammed, which sought to name Dr. Sandouka as a defendant related to his failure to separate Mohammed from K.H. before the assault. Doc. 9. On September 20, 2024, the Court allowed Mohammed to proceed on his claims against Dr. Hussain and recruited counsel for him. Doc. 10. In that order, the Court also denied Mohammed's motion for leave to file his proposed amended complaint without prejudice. *Id.* Recruited counsel filed a first amended complaint on Mohammed's behalf on March 13, 2025. Doc. 27. In the first amended complaint, Mohammed added claims against Dr. Sandouka and Dr. Sheikh.

While Mohammed acknowledges that the statute of limitations had run by the time he filed his first amended complaint, he makes several arguments for why his claims against Dr. Sandouka remain timely. First, Mohammed argues that his claims against Dr. Sandouka relate back to the original claims he raised in his *pro se* complaint, which named only Dr. Hussain and Evans. Rule 15(c) provides that an amendment relates back to the date of the original pleading when, as relevant here, either (1) Illinois law allows for relation back or (2) the amendment asserts a claim arising out of the same conduct, transaction, or occurrence set forth in the original complaint, the new party received notice of the action so that it would not be prejudiced in defending on the merits within the time limit provided by Rule 4(m), and the new party "knew or

11

should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1). The Illinois standard for relation back "substantially mirrors" Federal Rule of Civil Procedure 15(c)(1)(C), and so only one inquiry suffices here. *See Walstad v. Klink*, 2018 IL App (1st) 170070, ¶ 19; 735 Ill. Comp. Stat. 5/2-616(d) (setting forth the requirements for relation back under Illinois law).

Mohammed contends that his original complaint gave notice to all of his treatment team, including Dr. Sandouka, of Mohammed's claims within the statute of limitations. But Mohammed cannot show that Dr. Sandouka "knew or should have known that the action would have been brought against [him], but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1). Courts have identified three categories of mistakes under Rule 15(c)(1)(C): "(1) misstating the proper defendant's name; (2) fail[ing] to name the proper defendant or nam[ing] an incorrect defendant because the plaintiff does not know the correct defendant's identity; and (3) nam[ing] an incorrect [defendant] because of a mistake of law, such as when the underlying claim has not changed but the legally responsible institutional or individual party has been mistakenly identified." *Buy Direct, LLC v. DirectBuy, Inc.*, No. 2:15-CV-344, 2023 WL 142704, at *9 (N.D. Ind. Jan. 10, 2023) (alterations in original) (citation omitted) (internal quotation marks omitted). While Mohammed claims that he mistakenly identified Michelle Evans, the EMHC director, as a defendant in his initial complaint instead of Dr. Sandouka, nothing in the initial complaint suggests that he named Michelle Evans as a mistake, or that he understood that Evans played the role in his treatment that he now claims Dr. Sandouka did. *Cf. Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 549 (2010) ("That a plaintiff knows of a party's existence does not preclude her from making a mistake with respect to that party's identity. A plaintiff may know that a prospective defendant—call him party A—exists, while erroneously

12

believing him to have the status of party B. . . . If the plaintiff sues party B instead of party A under these circumstances, she has made a 'mistake concerning the proper party's identity' notwithstanding her knowledge of the existence of both parties."). Instead, his initial complaint included allegations that Evans learned of Mohammed's complaints about Dr. Hussain and requests for a change in psychiatrist through grievances but did nothing in response. He requested injunctive relief from Evans that she never place Mohammed under Dr. Hussain's care again. These allegations against Evans have nothing to do with Dr. Sandouka's treatment of Mohammed. And while Mohammed did mention the April 2022 assault in his initial complaint, that complaint does not suggest that Mohammed intended to proceed against any other individual but Dr. Hussain with respect to this assault, with Mohammed tying the assault only to Dr. Hussain's "irresponsible prescribing of medication," Doc. 1 at 11, not any alleged failure of Dr. Sandouka to separate the two roommates. The Court therefore cannot find that Mohammed mistakenly named Evans instead of Dr. Sandouka as a defendant in the initial complaint so as to satisfy the mistake requirement for relation back. *See Wilder v. Rivera*, No. 22 C 50444, 2025 WL 885719, at *8 (N.D. Ill. Mar. 21, 2025) ("[W]here there is no indication from the complaint that the plaintiff has mistaken identities, misunderstood the roles of different actors, or misnamed a party, a *possible* defendant that is mentioned in the complaint does not have reason to know that they should be or will be a party to the case."). Instead, it appears that Mohammed decided, after the limitations period passed, to expand his claims to include new ones against Dr. Sandouka, which does not provide a basis for relation back. *See Roman v. Jeffreys*, No. 19-CV-07271, 2024 WL 4333287, at *9 (N.D. Ill. Sept. 27, 2024) ("[T]he decision to add these Proposed Defendants appears to be a 'tactical decision' by plaintiff 'to expand the boundaries of the lawsuit' by adding a failure to intervene claim and this 'does qualify as mistaken identity' for

13

purposes of the Rule." (citation omitted)); *Walstad*, 2018 IL App (1st) 170070, ¶ 20 ("A plaintiff has not made a mistake if the allegations reveal that he or she intended to sue one party for misconduct but, after the time limitation period has passed, decides to add an additional defendant, not contemplated in the original complaint, who may also have been liable.").

Next, Mohammed argues that his claims against Dr. Sandouka involve a continuing violation, with the end date a question of fact that the Court cannot determine from the pleadings. The Seventh Circuit has recognized that a "claim based on deliberate indifference in the delivery of medical care does not necessarily allege a single event or a series of events, but may describe an ongoing denial of care," in which case a continuing violation exists for accrual purposes. *Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 517 (7th Cir. 2019). But all of Mohammed's allegations concerning Dr. Sandouka involve his alleged failure to take reasonable measures to separate Mohammed from K.H., culminating in K.H.'s assault on Mohammed on April 2, 2022. While his injuries from the assault lasted beyond this date, that does not affect the accrual date, as the claims against Dr. Sandouka involve "an actual physical injury, not an abstract or intangible one." *Devbrow v. Kalu*, 705 F.3d 765, 770 (7th Cir. 2013). And nothing in the first amended complaint suggests that Mohammed's claims reach any treatment that Dr. Sandouka provided after the assault.[4] Therefore, the continuing violation doctrine does not apply and the latest date for the accrual of Mohammed's claim against Dr. Sandouka is April 2, 2022, not some undetermined date that could potentially make his first amended complaint timely. *Id.* at 768 ("A § 1983 claim to redress a medical injury arising from deliberate indifference to a prisoner's serious medical needs accrues when the plaintiff knows of his

---

[4] In his response, Mohammed suggests that he also complains of Dr. Sandouka's failure to adjust Mohammed's care after the assault, *see* Doc. 67 at 10, but the citations he provides as support only address issues that led up to the April 2, 2022 assault, *see* Doc. 27 ¶¶ 27, 53.

14

physical injury and its cause.  The statute of limitations starts to run when the plaintiff discovers his injury and its cause even if the full extent or severity of the injury is not yet known.").

Finally, Mohammed argues that equitable tolling should apply.  The Court looks to Illinois law on tolling.  *Wallace v. Kato*, 549 U.S. 384, 394 (2007).  "While equitable tolling is recognized in Illinois, it is rarely applied." *City of Rockford v. Gilles*, 2022 IL App (2d) 210521, ¶ 65 (citation omitted); *see also Ademiju v. United States*, 999 F.3d 474, 477 (7th Cir. 2021) ("Equitable tolling is an extraordinary remedy that is 'rarely granted.'" (citations omitted)). "Equitable tolling of a statute of limitations may be appropriate if the defendant has actively misled the plaintiff, or if the plaintiff has been prevented from asserting his or her rights in some extraordinary way, or if the plaintiff has mistakenly asserted his or her rights in the wrong forum." *Clay v. Kuhl*, 189 Ill. 2d 603, 614 (2000).  "Extraordinary barriers that may warrant equitable tolling include legal disability, an irremediable lack of information, or circumstances where the plaintiff could not learn the identity of the proper defendants through the exercise of due diligence." *Gilles*, 2022 IL App (2d) 210521, ¶ 65.

Mohammed first argues that he could not comply with the statute of limitations due to a physical or mental impairment.  But under Illinois' equitable tolling rules, "a disability permits tolling only if it prevents a person from being 'fully able to manage his or her person or estate.'" *Biddle v. City of Chicago*, No. 24-2049, 2025 WL 838734, at *2 (7th Cir. Mar. 18, 2025) (quoting *Parks v. Kownacki*, 193 Ill. 2d 164, 178 (2000)).  Mohammed's mental or physical illnesses do not qualify as a legal disability for purposes of equitable tolling.  *Id.* (refusing to toll statute of limitations based on plaintiff's claim that "her mental illnesses and homelessness made it difficult for her to sue"); *Parks*, 193 Ill. 2d at 179 (plaintiff's claim that "defendants' conduct

rendered her 'psychiatrically unable' to take legal action" did not amount to a legal disability for purposes of equitable tolling).

Alternatively, Mohammed argues that he could not discover that Dr. Sandouka caused his injuries until well after April 2, 2022 because the connection between his injuries and Dr. Sandouka's failure to remove K.H. as his roommate was not evident and Mohammed did not discover he suffered from SSRI Syndrome until well after the assault. But Mohammed's attempt to invoke the discovery rule, which delays the accrual of claims "until such time as [the plaintiff] reasonably could have discovered the defendant's wrongdoing," *United States v. Spectrum Brands, Inc.*, 924 F.3d 337, 350 (7th Cir. 2019),[5] cannot save his claims against Dr. Sandouka. The discovery rule does not delay the accrual of a claim until a plaintiff knows of the existence of a legal claim but rather focuses on when a plaintiff should know of an injury and its likely cause. *See Kovacs v. United States*, 614 F.3d 666, 674 (7th Cir. 2010) ("It does not matter whether the plaintiff knows the injury is actionable—he need only know that he has been injured." (citation omitted)); *Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009) ("A plaintiff does not need to know that his injury is actionable to trigger the statute of limitations—the focus is on the discovery of the harm itself, not the discovery of the elements that make up a claim."); *Parks*, 193 Ill. 2d at 176–77 ("The limitations period begins running even if the plaintiff does not know that the misconduct was actionable."). Here, Mohammed knew of his injury stemming from Dr. Sandouka's alleged failure to remove K.H. as his roommate at the time of the assault, and a reasonable person could have discovered Dr. Sandouka's alleged wrongdoing at that time. Therefore, the discovery rule does not apply to

---

[5] Illinois law provides similarly, with the discovery rule delaying the accrual of claims until "the party seeking relief knows or reasonably should know of an injury and that it was wrongfully caused." *Ericson v. Conagra Foods, Inc.*, No. 20-cv-07065, 2021 WL 4133524, at *3 (N.D. Ill. Sept. 10, 2021) (citing *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 285 (2003)).

delay the accrual date of Mohammed's claims against Dr. Sandouka. Mohammed cannot proceed against Dr. Sandouka, and so the Court dismisses Dr. Sandouka as a defendant in this case.[6]

## CONCLUSION

For the foregoing reasons, the Court grants Dr. Sandouka's motion to dismiss [46] and denies Dr. Hussain's motion to dismiss [48]. The Court dismisses the claims against Dr. Sandouka with prejudice.

Dated: February 11, 2026

SARA L. ELLIS
United States District Judge

---

[6] Given this conclusion, the Court need not address Dr. Sandouka's arguments concerning the applicability of sovereign immunity to Mohammed's NIED claim against him.